# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

\*

MYRON S. LEVIN,

\*

Plaintiff,

\*

     v.                                        Civil Action No. PX 15-1880

\*

UNITED STATES OF AMERICA,

\*

Defendant.

\*\*\*\*\*\*

## MEMORANDUM OPINION

Pending in this federal income tax refund suit is Defendant United States of America's ("United States") Motion to Dismiss Plaintiff Myron S. Levin's ("Levin") Complaint, or in the alternative, for summary judgment against Levin. Also pending is Levin's cross-Motion for Summary Judgment against the United States. The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, the Defendant's motion to dismiss is granted.

## I.      Background[1]

In 1994, Plaintiff Myron S. Levin ("Levin") was a limited partner in the Maryland limited partnership, PCC Holdings Limited Partnership ("PCCH"). ECF No. 1 at 2. PCCH had only one other limited partner, Levin's brother, Lawrence Levin.

PCCH itself was a limited partner of another partnership entitled Presidential Corporate Center Associates, L.P. ("Presidential"). ECF No. 1 at 2. Presidential's only other partner was a

---

[1] These facts are derived from Levin's Complaint and the parties' joint stipulation of facts, and are accepted as true for purposes of Defendant's motion to dismiss. *See* ECF No. 23.

company named THREA Associates, LP (THREA). Presidential was in the business of developing real property located in Prince George's County, Maryland. ECF No. 23 at 1.

After an economic downturn in the real estate market, Levin was "no longer financially able to participate" in PCCH. ECF No. 23 at 2. As a result, in May 1994, PCCH agreed to exchange its entire interest in Presidential to THREA, and THREA agreed to assume the entirety of PCCH's share of Presidential's liabilities (the "Transaction"). ECF No. 23 at 2. As part of the abandonment of this partnership interest, Levin was discharged from some unspecified "personal guarantees." ECF No. 25-6 at 4. THREA did not provide PCCH or Levin any cash or other assets in exchange for this transaction. ECF No. 23 at 2.

Levin filed a joint federal income tax return for the tax year 1994 with the Internal Revenue Service ("IRS"). ECF No. 23 at 2.[2] In his tax return, Levin reported no tax liability specifically attributable to "his exchange of his partnership interest in PCC Holdings." ECF No. 23 at 2. Levin reported a net operating loss of $5,359,579 on his tax return. ECF No. 23 at 2. PCCH's return noted that Levin made a "capital contribution" to the partnership of $3,330,338. ECF No. 23 at 2. PCCH further indicated on its tax return that Levin had a negative capital account balance of $3,330,338 *prior* to the PCCH transfer of its interest in Presidential to THREA. ECF No. 23 at 2–3. After the Transaction, Levin's capital account balance in PCCH equaled zero. *Id.*

In 1998, the IRS conducted a partnership audit of PCCH pursuant to the Tax Equity and Fiscal Responsibility Act of 1982, 26 U.S.C. §§ 6221 *et seq.*("TEFRA"). ECF No. 23 at 3. Levin's brother served as the Tax Management Partner (TMP) of PCCH for the audit. ECF No. 23 at 3; ECF No. 25–6 at 11. The IRS and the TMP subsequently reached a settlement wherein

---

[2] Neither Levin nor the United States submitted a copy of the PCCH 1994 tax return into the summary judgment record.

the TMP agreed that PCCH erred in treating the Transaction as a cancellation of indebtedness rather than a capital gain "equivalent to each partner's negative account balance as of December 31, 1994." ECF No. 23 at 3.

On or about January 20, 1998, the IRS issued a Form 886-A Explanation of Items to the partnership which stated that PCCH should have reported the sale of its partnership interest in Presidential as a "gain," and not as a "capital contribution" from both of its partners on its 1994 partnership tax return. ECF No. 23 at 2; *see also* Explanation of Items, ECF No. 23-4 at 2. On August 25, 2000, the IRS assessed a $916,065 federal income tax against Levin as a result of the audit, reasoning that Levin had realized a gain from PCCH's sale of its interest to Presidential. ECF No. 23 at 4. The IRS did not issue a Statutory Notice of Deficiency. *Id.*

Between 2012 and 2014, Levin paid a total of $2,585,056.80 to the United States for the tax debt he owed for the 1994 income tax year. ECF No. 23 at 4. On March 21, 2014, Levin filed a Form 1040X claim with the IRS in Kansas City, Missouri seeking a refund of the federal income tax and interest he paid for the tax year 1994. *Id.* On June 10, 2014, the IRS confirmed the filing but disallowed Levin's claim. *Id.*

On June 25, 2015, Levin filed the instant Complaint against the United States asserting that the IRS's characterization of the income from the 1994 transaction was erroneous. ECF No. 1. Levin argues that the IRS should have characterized the Transaction as "discharge-of-indebtedness income," instead of a capital gain. ECF No. 25–6 at 13. Had the transaction been properly characterized, Levin now argues, the IRS would be required to determine Levin's solvency during the subject year on the partner-level because the judicially created "insolvency exception" allows an insolvent taxpayer to avoid recognizing a discharge of debt as income. ECF No. 25–6 at 13. *See, e.g.*, *Babin v. C.I.R.*, 23 F.3d 1032, 1035 (6th Cir. 1994) (citing *Gershkowitz*

3

*v. Commissioner*, 88 T.C. 984, 1005, 1987 WL 49310 (1987)) ("Under the insolvency exception, "a debtor will not recognize income under section 61(a)(12) if he is insolvent following the discharge of indebtedness."). This process would, in turn, require the issuance of an "affected items statutory notice of deficiency." ECF No. 25–6 at 13. Because Levin was given no such notice, he contends that he has jurisdiction to challenge the IRS determination. ECF No. 25–6 at 13. Levin seeks reimbursement of the federal income tax he paid for the 1994 tax year in the amount of $2,585,056.00 and pre- and post-judgment statutory interests from the initial date from which he first paid that amount. ECF No. 1 at 5. Levin also seeks reimbursement for the costs of bringing this action and any other relief the Court deems appropriate. ECF No. 1 at 5.

On February 10, 2017, the United States moved to dismiss the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, or alternatively for summary judgment pursuant to Rule 56. The United States argues that this Court lacks subject matter jurisdiction under § 7422(h) to revisit the characterization of income as to PCCH because it was a partnership level determination and a product of the IRS' settlement with the TMP. ECF No. 52 at 19.

In response, Levin filed a cross-motion for summary judgment on March 4, 2017. ECF No. 25. Levin acknowledges that his brother, acting as TMP for PCCH, settled with the IRS, and that settlement characterized the Transaction as capital gain. ECF No. 23 at 3. Levin nonetheless argues that because he did not participate in this audit, he is not bound by its findings. ECF No. 23 at 3. Levin contends that his brother "did not adequately communicate to [him] the particulars of the case and reached a settlement of it in a fashion that benefitted [Levin's brother] most." ECF No. 24–5 at 10. Neither Levin nor the United States has produced a copy of the settlement agreement. *See* ECF No. 24-1 at 13.

**II. Standard of Review**

Defendant's motion to dismiss for lack of subject matter jurisdiction is governed by Rule 12(b)(1). Generally, "questions of subject matter jurisdiction must be decided "'first, because they concern the court's very power to hear the case.'" *Owens–Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir.1999) (quoting 2 James Wm. Moore, et al., *Moore's Federal Practice* § 12.30[1] (3d ed.1998)). However, the plaintiff always bears the burden of proving that subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). When a party desires to proceed in a federal court, it "must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter." *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014) (quoting *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir.2008)). On a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant such a motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

**III.     Analysis**

The viability of Levin's claims depend on the application of the 1982 Tax Equity and Fiscal Responsibility Act to his case. An overview of the statutory scheme, therefore, is warranted. Under the Tax Code, a partnership is treated as a conduit through which income passes to its partners, who are then responsible for reporting their pro rata share of tax on their individual income tax returns. 26 U.S.C. § 706. Before Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982, 26 U.S.C. §§ 6221 *et seq.* ("TEFRA"), determining each partner's

individual tax obligation was a tedious and idiosyncratic process. TEFRA was created to

provide a "single unified procedure for determining the tax treatment of all partnership items at

the partnership level, rather than separately at the partner level." *Keener v. United States*, 551

F.3d 1358, 1361 (Fed. Cir. 2009) (quoting *In re Crowell*, 305 F.3d 474, 478 (6th Cir.

2002)). TEFRA thus established a "partnership level" proceeding which allows the IRS to

adjust items (e.g., deductions for business losses included on the partnership's' informational tax

return) at a singular proceeding, and subsequently assess all partners based upon the adjustment

to that particular item.

TEFRA established three categories for tax items considered in the treatment of

partnership tax: "partnership items," "nonpartnership items," and "affected items." 26 U.S.C. §

6231(a). A partnership item is:

> [A]ny item required to be taken into account for the partnership's
> taxable year under any provision of subtitle A to the extent
> regulations prescribed by the Secretary provided that, for purposes
> of this subtitle, such item is more appropriately determined at the
> partnership level than at the partner level.

26 U.S.C. § 6231(a)(3). Treasury Regulation § 301.6231(a)(3)–1 further identifies

partnership items as the income, gains, losses, deductions and credits of a partnership. 26 C.F.R.

§ 301.6231(a)(3)–1; *see also Prochorenko v. United States*, 243 F.3d 1359, 1363 (Fed. Cir.

2001); *Keener v. United States*, 76 Fed.Cl. 455, 458 (2007). A partnership item also includes

factors that affect the determination of partnership items such as "accounting practices and the

legal and factual determinations that underlie the determination of the amount, timing, and

characterization of items of income, credit, gain, loss, deduction." 26 C.F.R. § 301.6231(b). The

regulations further define "partnership items" as both "the partnership aggregate" and "each

partner's share" of the partnership's "income, gain, loss, deduction, or credit of the partnership."

26 C.F.R. § 301.6231(a)(3)–1(a)(1)(i) (2002).

By contrast, nonpartnership items are those items not treated as partnership items, 26

U.S.C. § 6231(a)(4), tax treatment of which is determined at the individual partner

level. *See Crnkovich v. United States,* 202 F.3d 1325, 1328–29 (Fed. Cir. 2000); *Keener*, 76

Fed.Cl. at 458. Affected items fall into a hybrid category, defined as "any item to the extent such

item is affected by a partnership item." 26 U.S.C. § 6231(a)(5). For example, this may include

penalties assessed against a partner based on the partner's tax treatment of partnership items on

his individual return,  *Olson v. United States*, 172 F.3d 1311, 1316–17 (Fed. Cir. 1999), or a

taxpayer-partner's medical expenses deduction under 26 U.S.C. § 213(a) are "affected items,"

*Rowland v. United States*, No. 7:07-CV-18-O, 2011 WL 2516170, at *2 (N.D. Tex. June 22,

2011).

If the IRS wishes to audit a partnership's advisory return, the IRS initiates proceedings at

the partnership level "to adjust 'partnership items,' those relevant to the partnership as a

whole." *Id.* The IRS then notifies individual partners of the adjustments to the partnership items,

and assesses all of the partners based on the adjustment. *Id.* This two-stage procedure avoids

having partnership items determined piecemeal at individual partner-level proceedings. *See*

*generally Irvine v. United States,* 729 F.3d 455, 459–60 (5th Cir. 2013).

The "Tax Matters Partner" is the central figure of the partnership during the partnership-

level administrative proceeding with the IRS. Each partnership must designate a general partner

as the TMP, 26 U.S.C. § 6231(a)(7)(A), usually when the partnership return is filed. *See* sec.

301.6231(a)(7)–1(c), Proced. & Admin. Regs. The TMP acts as the liaison between

the partnership and the IRS and represents the partnership in related judicial

proceedings. *Computer Programs Lambda, Ltd. v. Commissioner*, 89 T.C. 198, 205 (1987); *see also Transpac Drilling Venture 1982-12 v. C.I.R.*, 147 F.3d 221, 225 (2d Cir. 1998) ("By centralizing tax-related proceedings of the partnership in one person or entity, Congress created a statutory analogue of the class representative in class action proceedings."). For the duration of the TMP's designation, the TMP's decisions bind the partnership. *In re Miller*, 174 B.R. 791, 794 (B.A.P. 9th Cir. 1994), *aff'd*, 81 F.3d 169 (9th Cir. 1996).

The TMP or other partners can settle with the IRS as to the characterization of partnership items for a given taxable year. *See Keener v. United States*, 76 Fed.Cl. 455, 461 (2007) (citing 26 U.S.C. § 6224(c)), *aff'd*, 551 F.3d 1358 (Fed. Cir. 2009). Where the TMP settles on behalf of the partnership, all other partners are bound by the settlement, with two exceptions. Notice partners as defined in the Tax Code are not bound,[3] nor partners who specifically denied the TMP settlement authority on that partner's behalf. § 301.6224(c)–1. Such partners also may generally opt out of settlements reached between the TMP and IRS. *Keener*, 76 Fed. Cl. at 461 (citing 26 U.S.C. § 6224(c)).

At the conclusion of this process, the IRS must independently notify the individual partners of any adjustments made to the partnership items via Notice of Final Partnership Administrative Adjustment ("FPAA"). 26 U.S.C. § 6223(a)(2); *Irvine v. United States*, 729 F.3d 455, 460 (5th Cir. 2013)*; Rowland v. United States*, No. 7:07-CV-18-O, 2011 WL 2516170, at *2 (N.D. Tex. June 22, 2011). A Notice of FPAA sets out the proposed adjustments –for example, disallowing all or part of the partnership's deductions – and lists the grounds for the

---

[3] Section 6231 of Title 26 of the United States Code defines a "notice partner" as a partner who is entitled to notice under 26 U.S.C. § 6223(a). Section 6223(a) provides that the Secretary must give notice of the beginning and completion of administrative proceedings under TEFRA to partners who have furnished their names and addresses to the Secretary at least 30 days before the notice is mailed to the tax matters partner. Subsection (b) indicates that subsection (a) does not apply to a partner if the partnership has more than 100 partners and the partner has less than a 1 percent interest.

proposed adjustments. 26 U.S.C. § 6223; *see also Kaplan v. United States*, 133 F.3d 469, 471

(7th Cir.1998).

If a partner wishes to contest his or her individual tax assessment on the partner level, the

partner must pay the taxes and then file a refund action. District courts generally have subject

matter jurisdiction over a partner's refund claim. *Irvine,* 729 F.3d at 460 (citing 28 U.S.C. §

1340, § 1346(a)(1)); *see also United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4, 128

S.Ct. 1511, 170 L.Ed.2d 392 (2008) (citing 28 U.S.C. § 1346(a)(1)) (Generally, "[a] taxpayer

seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action

against the Government either in United States District Court or in the United States Court of

Federal Claims."). However, the partner must comply with the strict timing provisions of §

6226(a). Within 90 days from the FPAA issuing, the TMP may file a petition in tax court, federal

district court, or the federal court of claims for readjustment of partnership items. 26 U.S.C. §

6226(a). If the TMP does not so file within 90 days, then individual partners may petition for

readjustment of the partnership item "within 60 days after the close of the 90–day period." 26

U.S.C. § 6226(b). In either scenario, each partner during the relevant taxable year is treated as a

party to the action. *Id.*; § 6226(c)(1). If the petition for readjustment is filed timely, the court

retains jurisdiction "to determine all partnership items of the partnership for the partnership

taxable year to which the [FPAA] relates," and to determine "the proper allocation of such items

among the partners." *Id.* § 6226(f). *See Irvine,* 729 F.3d at 460. Failure to adhere to these timing

principles results in dismissal of the action.

At the outset, Levin challenges the TMP's authority under TEFRA to settle on behalf of

the partnership. Alluding to the lack of the settlement agreement in the summary judgment

record, Levin argues that no evidence exists demonstrating that he was a party to the settlement

agreement, ECF No. 30 at 6. Alternatively, Levin argues that he is not bound by the TMP settlement because Levin is a notice partner. ECF No. 30 at 8.[4]

Levin, as the party seeking to assert the Court's jurisdiction, bears the burden of establishing jurisdiction. To the extent Levin challenges the settlement agreement's applicability, the agreement itself is a partnership item because it affected the entire partnership's bottom-line. *See Acute Care Specialists II v. United States*, 727 F.3d 802, 809 (7th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (Nov. 5, 2013) (citing 26 U.S.C. § 6231(a)(3); 26 C.F.R. § 301.6231(a)(3)–1(b)). Accordingly, Levin's bare allegations that the settlement agreement does not reach him because the TMP lacked the authority to settle on Plaintiff's behalf, *see* Complaint, ECF No. 1 at 3, carries little weight in the absence of the agreement itself or any other evidence supporting Levin's bald assertion.

Levin next challenges the propriety of the FPAA by claiming that as a notice partner, he is not bound by the settlement agreement. Levin may be correct that "TEFRA . . . excludes partners entitled to notice and partners properly objecting to the TMP's authority from tax settlements entered into by the TMP." *Adams v. Johnson*, 355 F.3d 1179, 1187 (9th Cir. 2004) (citing 26 U.S.C. § 6224(c))). But even if the Court assumes Levin was a notice partner who possesses authority to challenge the settlement agreement, his claims are nonetheless time-barred. The IRS sends the FPAA to both the notice partner(s) and the TMP. *See* Sec. 6223(a)(2); *Taurus FX Partners, LLC v. C.I.R.*, 106 T.C.M. (CCH) 40 (2013) (citing Sec. 6223(d)(2)) ("The IRS then must send a copy of the FPAA to the notice partners who are identified on the partnership return for the year at issue."). Any challenges to the FPAA must be brought within

---

[4] A notice partner is generally defined as any partner in a partnership with 100 or fewer partners, and a partner with a 1 percent or greater profits interest in a partnership with more than 100 partners. IRC § 6231(a)(8); see also *Han Kook LLC I-D v. C.I.R.*, 102 T.C.M. (CCH) 258 (2011). Levin claims that he is a notice partner because of his 50% ownership interest in PCCH, which had a total of seven partners within the partnership. ECF No. 30; *see* ECF No. 23-4 at 2–3.

the time set forth in § 6226. *Han Kook LLC I-D v. C.I.R.*, 102 T.C.M. (CCH) 258 (2011) (citing § 6226(f)). Specifically under § 6226, the TMP has 90 days to file a petition for readjustment of partnership items. *Id.*, citing *PCMG Trading Partners XX, L.P. v. Commissioner*, 131 T.C. 206, 207, 2008 WL 5191382 (2008). If the TMP fails to do so, § 6226(b)(1) allows any notice or other partner to file a petition for readjustment of partnership items within 60 days after the close of the 90–day period. *Han Kook LLC I-D v. C.I.R.*, 102 T.C.M. (CCH) 258 (2011); *PCMG Trading Partners XX, L.P. v. Commissioner*, 131 T.C. 206, 207, 2008 WL 5191382 (2008). Importantly – and unequivocally – the timing provisions are strict and jurisdictional. *Id.*

Here, Defendant issued the FPAA on or about January 20, 1998. *See* Form 886-A Explanation of Items, ECF No. 23-4 at 2–3; ECF No. 23 at 2 (The IRS's Explanation of Items issued to PCC Holdings stated that "each partner's share of the long-term capital gain is equivalent to each partner's negative capital account balance as of December 31, 1994."). Levin did not file the instant action until June 25, 2015. *See* ECF No. 1. Additionally, Levin failed to pursue his right to participate in the administrative adjustment or the right to seek a separate agreement at any time with the IRS within one hundred fifty days after the issuance of the FPAA. The Court, therefore, lacks jurisdiction over his Complaint.

Levin relies on *Greenwald v. Commissioner*, 142 T.C. 308 (2014) to argue that he may nonetheless challenge the FPAA here. In *Greenwald*, that tax court determined that it retained jurisdiction to review the notice of computational adjustment and an affected item notice of deficiency as to the Greenwalds. The Tax Court concluded the Greenwalds' outside basis could not be determined without looking at other partner-specific items, such as payment of legal fees by the partners on behalf of the partnership. Thus, the Court held that it maintained jurisdiction on the Greenwald's action.

By contrast, the characterization of the income from the sale of PCCH's interest in

Presidential to THREA is indisputably a partnership-level item. Partnership items include any

gain or loss, partnership liabilities, and transactions and operations necessary to determine

investment credit or its recapture. See Treas.Reg. § 301.6231(a)(3)-1(a)(1)(i)-(vi). They also

include determinations affecting such items. Treas.Reg. § 301.6231(a)(3)-1(b). *See also Bassing*

*v. United States*, 563 F.3d 1280, 1283 (holding partner refund action barred because liquidation

of partnership with negative capital account balance properly realized as taxable gain was

partnership item). The sale of PCCH's interest in Presidential to THREA realized a gain to the

partnership. Accordingly, because the FPAA concerned partnership-items only, Levin is bound

by the jurisdictional time limitations in § 6226 to bring the instant action. *Greenwald* does not

disturb this analysis.

Further, in the unlikely event the missing FPAA did not apply to Levin, this Court is still

barred from hearing his federal income tax refund suit. TEFRA deprives courts of jurisdiction

over claims "brought for a refund attributable to partnership items," with limited exceptions. 26

U.S.C. § 7422. As noted above, the overarching Transaction in this case is the tax liability of the

partnership, undoubtedly a partnership-level proceeding. Levin's individual tax liability is

wholly part of the same transaction. Levin's adjustment was necessary to satisfy the

*partnership's* obligations and, although applied individually, the assessment was proportionate to

his PCCH ownership and responsibility as a partner. *See* Form 886-A Explanation of Items, ECF

No. 23-4 at 2–3; ECF No. 23 at 2; Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i)  (A partnership item

includes "the partnership's aggregate and each partner's share of . . . [i]tems of gross income,

loss, deduction, or credit of the partnership."). Further, TEFRA notably removes subject matter

jurisdiction not only for partnership item refunds, but claims "brought for a refund *attributable* to

partnership items." 26 U.S.C. § 7422(h) (emphasis added). *See also Kenner v. U.S.*, 551 F.3d 1358, 1366 (Fed. Cir. 2009) (noting that the plaintiff's "argument relies on the mistaken premise that § 7422(h) only bars claims for a refund of partnership items. The statute, however, bars refund claims *attributable to* partnership items."). Thus, even if Levin had satisfactorily established that his individual claim is a partner-level federal income tax refund suit not precluded by the 1998 FPAA, the merits of this action cannot be determined without revisiting the underlying partnership item. The court's jurisdiction to hear such a claim is barred by § 7422(h).

## IV. Conclusion

In sum, because Plaintiff's Complaint demands the re-characterization of a partnership item long after the TERFA proceedings have terminated, the Court lacks jurisdiction over his claim. Accordingly, the Complaint must be dismissed. A separate Order follows.


 9/13/2017                                                            /S/
Date                                            Paula Xinis
                                                United States District Judge